BELLA FARERH, petitioner-respondent,

*v.*

JOSEPH FARERH, defendant-appellant.

[Decided October 5th, 1934.]

On appeal from a decree of the court of chancery advised by Advisory Master Herr, who filed the following opinion:

"The parties to this suit were married in Russia in the year 1904 and lived in that country as husband and wife for a number of years. Five children were born to them there, of whom three survive. In the year 1913 the petitioner brought her children to this country and joined her husband who had preceded her and had become established in business in Newark. They have lived at various places in the city of Newark ever since. Two children were born to them here, of whom one now survives and is ten years old.

"The petitioner testified that when she landed in this coun-

try and was met by the defendant at Ellis Island, he seemed cold in his welcome, and that the home he had provided seemed strange and uninviting. She complains that his conduct toward her has at all times since been distant, cool and uncongenial. The evidence satisfies me, however, that the defendant's welcome to his wife and children upon their arrival and his subsequent attitude toward them were cordial and affectionate, and that the petitioner merely imagined that he was otherwise. When she arrived she found her husband strange because they had been separated for some years, during which he had become Americanized, while she had remained a Russian peasant's wife. It is not difficult to glean from the evidence that she suffered from an unconscious sense of inferiority, an unreasoned perception of his success in adapting himself to their new environment and an unacknowledged feeling of hopelessness of her ability to continue to attract him.

"The result was a jealousy of him which at first manifested itself in a suspicion that he was more interested in other women than in herself, and which later developed into a self-indulgent and venal disposition toward him.

"Almost from the beginning of her life in this country, the petitioner secreted moneys diverted by her from the liberal household allowances which the defendant gave her, depositing or investing such moneys in her maiden name or in trust for one or another of her children with the purpose of concealing from her husband the existence of such savings. She exacted lump sums of money from the defendant before consenting to convey property held by the entirety. Altogether, she accumulated in this manner sums amounting to several thousand dollars. As time went on, her avarice and cupidity increased.

"In January of 1928 a trivial quarrel occurred, in respect to an automobile which the defendant desired to purchase. The petitioner objected to his spending the money required to purchase it. She testified that he thereupon left her bed and has ever since refused to return to her although he has continued to live in the same house. I find the fact to be, how-

ever, that it was she who excluded him from her bedroom as she had previously done on several occasions.

"Through many years the petitioner had been capricious, selfish and inconsiderate in her attitude toward the defendant. She had repeatedly demanded a price for her favors. His conduct toward her had been indulgent to a fault. He had consistently acceded to her demands, however unjustified they were.

"Her conduct following the 1928 quarrel was not new to him; she was doing again what she had done before, and she expected her conduct would result, as it had on earlier occasions, in bringing him to his knees. His previous course of conduct toward her naturally led her to suppose that he would again, in time, submit to her demands and would return to her in humility, bearing gifts.

"But for the first time he refused to humble himself. He did not approach her for six months. She repulsed him on that occasion because his manner was such as to cause her to believe that he was desirous not of reconciliation but of mere gratification of his sexual appetite. He never approached her again. His manner toward her has been lacking in affection ever since the quarrel of January, 1928. His attitude has been resentful or indifferent and his language often coarse and brutal. Although they continued to live in the same house they became further and further estranged until there was practically no communication between them.

"Had the defendant resisted the petitioner's earlier unwarranted and capricious demands, instead of indulging her, she would not have come to believe, after repeated successes, that she could with impunity continue to make her unjustifiable exactions. She would not, in my judgment, have excluded him from her bedroom in January, 1928. Certainly she would not have persisted in so excluding him after her temper had cooled. As it was, she waited for him to make his customary advances. When he failed to do so, it is evident that she regretted her act and was for at least two years in a receptive frame of mind. Had he approached her during this period in a sincere effort to effect a reconciliation, it is my judgment that he would easily have effected it.

"The defendant's consistent indulgence of the petitioner's caprices brought about a situation which threw upon him the burden of making reasonable advances to effect a reconciliation. His conduct in this respect contributed toward her desertion, and the duty was cast upon him to make such advances or concessions to his wife as might be reasonably expected to induce her to resume marital relations. *Hall* v. *Hall, 60 N. J. Eq. 469.*

"In my judgment he failed to make such 'just advances.' He never spoke to the petitioner except to call her vile names. His manner was often so violent and repelling that his own children were afraid to speak to him on the subject. At other times he showed indifference. He may have sent his sister to talk to his wife, but he should have gone himself, not roughly demanding her favors, as he did on the only occasion on which he approached her at all, but in a manner reasonably calculated to induce her to return.

"Since it was the petitioner who withdrew herself from the conjugal bed, and not the defendant, her suit must fail. She *is guilty of abandonment, not the defendant.*

"The defendant must also fail on his counter-claim, in my judgment, because the circumstances cast upon him the duty of making just advances, which he failed to make but which, had he made them would presumably have effected a reconciliation. It is argued on his behalf that such advances would not have effected a permanent reconciliation, since she would presumably have continued to make unreasonable demands upon him and seek to enforce them by excluding him from her bed. To the extent that she might have so conducted herself after such reconciliation, however, his own past indulgence would have been the cause. No doubt it would have required tactful effort on his part to have brought her into conformity with normal standards. But the burden, whatever it might have proved to be, was of his own creation and he cannot be heard to complain of it.

"My conclusion with respect to the defendant's counter-claim has been reached only after considerable reluctance. It is unfortunate that this defendant's very kindness and gener-

osity to his wife through many years of marriage should now become the ground of preventing his divorcing her for her willful and continued desertion, especially since she has been shown from the beginning to have been lacking in her wifely duty toward him. But I cannot escape the conclusion that his too-indulgent treatment of her through many years created a situation demanding a more kindly and tactful approach on his part than he has had patience or desire to make.

"In June, 1931, the petitioner brought proceedings in the domestic relations court of Essex county, charging that the defendant had failed and neglected to support her and her minor children. She did not disclose to that court the existence of an investment of $6,000 which she had made in her own name from funds surreptitiously secured directly and indirectly from the defendant. That court found in her favor, and entered an order that the defendant pay her a certain weekly sum, the order, twice since modified, being still in effect and being still obeyed by the defendant.

"The proceedings of the domestic relations court are not, in my opinion, binding in any respect upon either of the parties so far as the issues in the present suit are concerned. The proceedings in that court were taken and its jurisdiction based upon the Juvenile and Domestic Relations act of 1929. *P. L. 1929 ch. 157.* The point there involved was limited to adequacy of support. That question is not in issue here.

"I will deny the petitioner's motion for counsel fees. The defendant's counter-claim did not impose upon her any greater burden than his answer alone would have done, since the charge against her was desertion, based upon the same facts relied on by her to secure a limited divorce on the same ground. She has accumulated moneys from him, amounting to thousands of dollars, some by direct exactions and some by wrongful diversion of household allowances. She should be required to pay her own counsel. Costs also will be disallowed.

"For the reasons above set forth, I will advise a decree dismissing the petition and the counter-claim."

■

*Mr. David M. Litwin,* for the appellant.

*Messrs. Kalisch & Kalisch (Mr. Samuel Kalisch,* of counsel), for the respondent.

PER CURIAM.

The decree under review will be affirmed, for the reasons expressed in the opinion of Advisory Master Herr.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.